UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

KEVIN J. REYNOLDS,

        Defendant.

Case No. 07-cr-178-pp

---

**ORDER DENYING DEFENDANT'S LETTER MOTION FOR COMPASSIONATE RELEASE OR FOR HOME CONFINEMENT (DKT. NO. 157)**

---

On February 5, 2020, the court revoked the defendant's supervised release and sentenced him to serve six months in custody; the court also allowed the defendant to self-surrender. Dkt. Nos. 154, 155.

On May 26, 2020, the court received this *pro se* letter motion from the defendant. Dkt. No. 41. The defendant asks the court for compassionate release and also mentions Attorney general Barr's April 3, 2020 memorandum instructing the Bureau of Prisons to prioritize home confinement. Id. The defendant is at the Federal Medical Center in Rochester, Minnesota. Id. He explains that before he surrendered to serve his sentence, he was supposed to have knee surgery; that surgery has been postponed due to COVID. Id. He says that his chronic stomach pains (the result, he says, of an accident eighteen months ago) are flaring up because he is being denied his medication. Id. The defendant describes the living quarters at Rochester, saying that the inmates cannot socially distance. Id. The defendant says that he has had chronic asthma since birth. Id. The defendant says that FMC Rochester is not equipped

1

to treat COVID patients, that it has no ventilators and has not been testing inmates. Id. He reports that one staff member has tested positive. Id.

The defendant also indicates that he maintained employment before his incarceration, that he has financial responsibilities for his son and his mother, that his mother has medical issues, that his sister needs him and that his son's mother needs him. Id. He explains that if his son's mother returned to work, his son would have to go to daycare, and because his son also has an asthma history, the thought of this scares him. Id.

The court asked Federal Defender Services to review the motion to determine whether it might file something on the defendant's behalf. Federal Defender Services responded that due to the demands on its time, it could not file anything for the defendant, but emphasized that it was not taking a position on whether the court should grant the defendant's motion. Dkt. No. 159.

The court also asked the government and probation to weigh in on the defendant's motion. The probation office reports that the defendant self-reported to FMC Rochester on March 30, 2020. Dkt. No. 161 at 2. It relays that defendant's medical records show that he suffers from gastritis and that he has been diagnosed with a hernia. Id. Probation notes, however, that neither the defendant's presentence report nor his prison medical records reflect a history of asthma. Id. Rochester reported to probation that the defendant has not yet been given medicine for his stomach pain because it has not yet received his medical records. Id.

Records show that the defendant did ask the warden of FMC Rochester for compassionate release on June 1, 2020. Id. As of June 18, 2020, however, the warden had not responded. Id.

2

The government points to the Bureau of Prisons web site, which reports that Rochester has had no inmates test positive and that no staff currently are positive. Dkt. No. 162 at 2; https://www.bop.gov/coronavirus. The government asserts that the defendant has not exhausted his administrative remedies, because it has not been thirty days since he asked the warden for compassionate release. Dkt. No. 162 at 3. Finally, the government argues that the defendant has not demonstrated extraordinary and compelling reasons for his release—he is relatively young and he resides in a federal *medical* facility that has no current COVID cases. Id. at 4. For these reasons, the government asks the court to deny the defendant's motion. Id.

To the extent that the defendant is asking the court to order the Bureau of Prisons to place him on home confinement, the court does not have the authority grant that request. Section 12003 of the CARES Act applies to the Bureau of Prisons. Section 12003(b)(1)(2) reads:

> HOME CONFINEMENT AUTHORITY.—During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the *Director of the Bureau* may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the *Director* deems appropriate.

CARES Act, Pub. L. 116-136, §12003(b)(1)(2) (emphasis added). "The BOP has the authority to place someone on home confinement, and to decide when to do so." United States v. Menzie, No. 11-cr-63-pp, 2020 WL 1991577, at *3 (E.D. Wis. Apr. 27, 2020) (citing 18 U.S.C. §3624(c)). The court does not have that authority.

The defendant mentioned a memo by United States Attorney General William Barr. On March 26, 2020, General Barr did issue a memo entitled

"Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic." https://www.bop.gov/coronavirus/docs/bop_memo_home_ confinement.pdf. That memo, however, was addressed to the *Bureau of Prisons*, and directed the *Bureau of Prisons* to prioritize its statutory authorities to grant home confinement for inmates who seek it in connection with COVID-19. It directs the BOP to take into account the inmate's age and vulnerability to COVID-19, the security level of the inmate (with priority given to those in low and minimum security facilities), the inmate's conduct in prison, the inmate's PATTERN score, the inmate's plan for re-entering society and the inmate's original offense of conviction. Id. If the defendant believes that these factors weigh in favor of his release to home confinement, he should talk to his case manager about how to make that request to the warden.

To the extent that the defendant is asking the court to reduce his sentence under the compassionate release provision of the First Step Act, he has not demonstrated that he is entitled to that relief. Generally, a court may not modify a term of imprisonment once it has been imposed. 18 U.S.C. §3582(c). The compassionate release provision of the First Step Act makes an exception to that rule in certain narrow circumstances. It says:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(b);
>
> And that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

The first part of the statute—section (c)(1)(A)—says that the Director of the Bureau of Prisons may make a motion to the court, asking for a compassionate release sentence reduction. The BOP has not done that here.

In the alternative, the statute says that the *defendant* may make a motion to the court after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." According to probation, the defendant made his request of the warden at FMC Rochester on June 1, 2020—*after* he made his request to this court. The statute requires that he ask the warden *before* he asks the court. Further, thirty days have not passed since the defendant made his request of the warden, and the court has no evidence that the warden denied it or that the defendant has "fully exhausted all administrative rights to appeal" the warden's refusal to bring a motion on his behalf. Program Statement 5050.50 lays out the administrative appeal procedure, explaining that an inmate whose request is denied "may appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B)." https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The court has no evidence that the warden denied any compassionate release request or that the defendant appealed such a denial within the BOP administrative remedy program.

5

Even if the defendant had asked the warden first, been denied and appealed before filing this motion, the court would not grant him a compassionate release sentence reduction. Section 3852(c)(1)(A)(ii) doesn't apply to the defendant; he is not at least seventy years old (he is twenty-five), has not served at least ten years of his sentence and the BOP has not determined that he is not a danger to the community. So the only basis for the court to grant his motion would be §3582(c)(1)(A)(i)—if there were "extraordinary and compelling reasons" that warranted a sentence reduction. The application note to U.S.S.G. §1B1.13 defines "extraordinary and compelling" reasons:

(A) **Medical Condition of the Defendant.**—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples included metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

That substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The defendant does not fall into category (A). He does not allege that he suffers from a terminal illness or from any severe illness or impairment that would diminish his ability to care for himself and from which he is not likely to recover. While the defendant alleges that he currently suffers from asthma, there is no medical evidence to that effect and the proof in the record says otherwise. The fact that the defendant's knee surgery had to be postponed is unfortunate, but people who are not incarcerated are having procedures postponed due to the risks posed by COVID-19. The defendant reports that his stomach pain has increased; it sounds as if FMC Rochester is waiting to get his medical records before administering medication. Stomach pain is not a risk factor for severe illness if infected with COVID-19.

The court is not a doctor or an infectious disease expert. But the defendant reports no other serious underlying health issues. He is in his thirties. He doesn't fall into category (B).

Nor does the defendant fall into category (C)—he has not alleged that anyone who cares for his children has passed away or is incapacitated, or that he is the only person who can care for an incapacitated spouse. The court is sorry to hear of the defendant's mother's illness and his concern that his son

7

may have to go into daycare. But a sick parent is not listed as an extraordinary and compelling factor. Many defendants who are in custody must be separated from people that they love who become ill and sometimes pass—even in times when there is no worldwide pandemic. Similarly, many people in custody are worried about their families. These are difficult, stressful circumstances, but they are not "extraordinary and compelling." So the court must analyze whether there are some other extraordinary or compelling circumstances in this defendant's particular case that warrant the compassionate release reduction. There are not.

The defendant is young and relatively healthy. He is in a facility that has been lucky enough to have no active cases of COVID-19 and is a medical facility, to boot. He is worried about his mother, his son and his son's mother, but that is not an "extraordinary or compelling" circumstance. Since the advent of COVID-19, this court has received many compassionate release motions. Some have been from inmates who are in facilities with hundreds of confirmed cases of COVID-19. Some are from inmates who have seen fellow inmates die of the virus. Some are from inmates with high blood pressure, arthritis, mental health issues. At least one was from an inmate who had been infected with the virus. The court denied many of those motions, because the defendants did not demonstrate "extraordinary and compelling" circumstances. The defendant in this case is better off than many of those defendants.

The court does not mean to trivialize the defendant's concerns about COVID-19. The court knows that many incarcerated persons cannot practice social distancing, do not have masks, cannot wash their hands frequently, have no access to hand sanitizer. It is much harder for inmates to take the precautions that public health experts advise all of us to take to avoid the

8

Case 2:07-cr-00178-PP    Filed 06/22/20    Page 8 of 9    Document 163

spread of this dangerous virus. The court understands why the defendant is afraid, and why he is worried about his family.

If, however, fear of the virus was a basis for granting a sentence reduction for compassionate release, there would no longer be inmates in any jails or prisons. The defendant has not demonstrated the extraordinary and compelling circumstances that would justify the sentence reduction he requests.

The court **DENIES** the defendant's letter motion for home detention or compassionate release. Dkt. No. 157.

Dated in Milwaukee, Wisconsin this 22nd day of June, 2020.

                                                **BY THE COURT:**

                                                **HON. PAMELA PEPPER**
                                                **Chief United States District Judge**